**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 3 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

INTERFAB, LTD.,

      Plaintiff-Appellant,

v.

VALIANT INDUSTRIER AS;
PHILLIPS PETROLEUM COMPANY,
NORWAY,

      Defendants-Appellees.

No. 98-5219
(D.C. No. 98-CV-204-C)
(N.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **ANDERSON** and **KELLY**, Circuit Judges, and **BROWN**,** Senior
District Judge.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

\*\*     Honorable Wesley E. Brown, Senior District Judge, United States District
Court for the District of Kansas, sitting by designation.

argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Plaintiff InterFab, Ltd., an Oklahoma corporation with its principal place of business in Tulsa (InterFab), filed a complaint in Oklahoma federal district court alleging breach of contract, tortious business inference and fraud against Valiant Industrier, AS, a Norwegian corporation with its only place of business in Norway (Valiant), and alleging breach of contract, tortious business interference and negligent entrustment against Phillips Petroleum Company Norway, a Delaware corporation with its principal place of business in Norway (Phillips Norway).  The district court dismissed the complaint on the grounds of *forum non conveniens*.  We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

## Background

Phillips Norway sold drilling derricks and related equipment to Valiant in 1997 pursuant to a sales agreement which was negotiated entirely in Norway and was governed by Norwegian law.  Phillips Norway delivered the rigs and equipment to Valiant in Norway.  During this same period, InterFab's President, William Schluneger, who was in Norway on unrelated business, became aware that the rigs and equipment were available for resale.  He contacted Valiant and expressed an interest in purchasing the goods.  While in Norway, Schluneger inspected and selected the rigs and equipment that InterFab wished to purchase.

Valiant and InterFab negotiated some terms of a purchase agreement in Norway, and negotiated the remaining terms during telephone calls and by facsimile between the parties in Norway and Oklahoma. The purchase agreement was signed by InterFab and Valiant in Tulsa, Oklahoma. The agreement called for piecemeal delivery of the goods with corresponding payments. Delivery of the rigs and equipment was to be "FOB Stavanger" Norway. Appellant's App. at 92. The parties did not express any agreement in the contract with respect to the law that would control the interpretation of the purchase agreement.

Valiant shipped the first set of rigs and equipment to InterFab but InterFab immediately claimed that the equipment had not been refurbished, was incomplete and did not include spare parts. Nevertheless, Valiant shipped two additional shipments of goods to InterFab. InterFab wire-transferred funds to Valiant for the goods that had been shipped. InterFab claims that, despite receipt of these funds, Valiant failed to release title to the rigs and equipment. The parties failed to resolve their differences, and the equipment which had been shipped under the purchase agreement was sent back to Norway, where it is currently held in storage.

InterFab's complaint alleges that Valiant breached the purchase agreement by failing to refurbish the equipment, shipping incomplete equipment, failing to ship spare parts, and failing to release the equipment after receiving payment.

InterFab also alleges that Valiant misrepresented the value and condition of the goods and fraudulently induced it to wire-transfer the funds when it had no intent to release the equipment. InterFab alleged that Phillips Norway was engaged in a joint venture with Valiant to resell the rigs and equipment, that it negligently entrusted the resale to Valiant, misrepresented the value and condition of the goods, and had knowledge that Valiant failed to refurbish the equipment. In response, Valiant alleged that InterFab breached the contract by failing to pay the money due upon execution of the contract, failing to pay prior to each shipment and failing to pay for the equipment that had been shipped.

The district court granted defendants' motion to dismiss on the grounds of *forum non conveniens*. Under the federal doctrine of *forum non conveniens*,

> when an alternative forum has jurisdiction to hear [a] case, and when trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)). [1]

---

[1] The common law *forum non conveniens* doctrine applies when the movant seeks dismissal to a foreign forum. If the movant seeks a change of venue from one U.S. district court to another, the procedural vehicle is 28 U.S.C. § 1404(a). *See* 15 Charles A. Wright et al., Federal Practice and Procedure § 3828, at 278-79

(continued...)

-4-

We have held that "[t]here are two threshold questions in the *forum non conveniens* determination:  first, whether there is an adequate alternative forum in which the defendant is amenable to process, and second, whether foreign law applies." *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 605 (10th Cir. 1998), *cert. denied*, 119 S. Ct. 1755 (1999) (citations omitted).  "If the answer to either of these questions is no, the *forum non conveniens* doctrine is inapplicable." *Id*. at 605-06.  "If, however, the answer to both questions is yes, the court goes on to weigh the private and public interests bearing on the *forum non conveniens* decision." *Id.* at 606. [2]

"The *forum non conveniens* determination is committed to the sound discretion of the trial court." *Piper Aircraft Co.*, 454 U.S. at 257.  A district

---

[1](...continued)
(1986).

[2]      The private interest factors to be considered are:  (1) the relative ease of access to sources of proof; (2) availability of compulsory process for compelling attendance of witnesses; (3) cost of obtaining attendance of willing non-party witnesses; (4) possibility of a view of the premises, if appropriate; and (5) all other practical problems that make trial of the case easy, expeditious and inexpensive.  The public interest factors include:  (1) administrative difficulties of courts with congested dockets which can be caused by cases not being filed at their place of origin; (2) the burden of jury duty on members of a community with no connection to the litigation; (3) the local interest in having localized controversies decided at home; and (4) the appropriateness of having diversity cases tried in a forum that is familiar with the governing law.

*Id*. (citations omitted).

court's determination with respect to *forum non conveniens* "may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Id*.

## Analysis

InterFab does not dispute that an adequate alternative forum exists to hear its claims in Norway, nor does it contest the district court's findings that the private and public interests favor trial in Norway. It alleges only that the district court erred in its determination that, under the applicable choice of law principles, Norwegian law controls the resolution of this case. It asserts that American law governs the case and, therefore, that *forum non conveniens* is inapplicable. *See Needham v. Phillips Petroleum Co. of Norway*, 719 F.2d 1481, 1483 (10th Cir. 1983) (holding that *forum non conveniens* is not applicable if American law controls). "We review choice of law decisions de novo." *Gschwind*, 161 F.3d at 608.

The conflict of laws rules of the forum state, Oklahoma, must be applied to determine whether Norwegian or Oklahoma law governs this cause of action. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Electrical Distrib., Inc. v. SFR, Inc.*, 166 F.3d 1074, 1083 (10th Cir. 1999). The parties agree that their contract involved the sale of goods and, therefore, that the sale is

governed by the provisions of Article 2 of Oklahoma's Uniform Commercial Code (UCC). *See* Okla. Stat. tit. 12A, §§ 2-102 and 2-105(1). The Oklahoma Court of Appeals has held that in a case involving the sale of goods under the UCC, in the absence of an effective choice of law by the parties, the law of the state with the "most significant relationship," as set forth in the Restatement (Second) of Conflict of Laws (1971) (hereafter referred to as the Restatement), is the law to be applied. *See Collins Radio Co. v. Bell*, 623 P.2d 1039, 1046-47 (Okla. Ct. App. 1980) (applying the Restatement's "most significant relationship" test in the context of sales covered by the UCC); *cf. Bohannan v. Allstate Ins. Co.*, 820 P.2d 787, 795 (Okla. 1991) (noting that the UCC supports use of the "most significant relationship" test in a case involving the sale of goods, as applied in *Collins Radio*). Similarly, in tort cases, "Oklahoma applies the 'most significant relationship' test stated in § 145 of the Restatement. . . ." *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 619 (10th Cir. 1998) (citing *Beard v. Viene*, 826 P.2d 990, 995 (Okla. 1992) and *Brickner v. Gooden*, 525 P.2d 632, 637 (Okla. 1974)).

## 1. Breach of Contract Claim

With respect to the issues in contract litigation, the Restatement provides that the contacts to be evaluated under the most significant relationship test are, according to their relative importance: "(1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Collins Radio*, 623 P.2d at 1047 (citing Restatement § 188(2) (1971)). "In a contract for the sale of goods, the most significant contact is the place of delivery, unless another state has a more significant relationship." *Id*. (citing Restatement § 191).

The district court determined that Norwegian law governed the breach of contract claim because the contract called for the rigs and equipment to be delivered F.O.B. Stavanger, Norway. InterFab contends that, notwithstanding the contract's provision that the place of delivery was Stavanger, Valiant in fact shipped some of the rigs and equipment in advance of receiving payment, and some of the goods arrived in the United States but were then shipped back because of the parties' dispute. Thus, InterFab argues, the place of delivery was actually Tulsa, Oklahoma. We disagree.

The contract between Valiant and InterFab called for the place of delivery to be Stavanger, Norway. *See* Restatement § 191 cmt. d ("In an f.o.b. contract,

the place of delivery ordinarily is that where under the terms of the contract the seller is to deliver the goods to the carrier f.o.b.").  Delivery in fact took place in Norway when Valiant delivered the goods to the shipping agent there. *See* Okla. Stat. tit. 12A, § 2-401 (providing that the place of delivery is the place where the seller "completes his performance with reference to the physical delivery of the goods . . . even though a document of title is to be delivered at a different time or place");  *see also*  Restatement § 191, cmt. d (explaining that the place of delivery is where the seller is required by the contract to yield possession of the goods).  Thus, the fact that InterFab did not send payment for the goods until some of the goods had already been shipped or that some of the goods were then shipped back because of the parties' dispute does not alter the contract's "FOB Stavanger" provision.

Furthermore, we are persuaded that the remaining relevant factors also predominate in favor of the application of Norwegian law.  Although some of the contract negotiations occurred both in Norway and Oklahoma by telephone and facsimile, many basic terms of the contract were negotiated in Norway, including which equipment was to be sold, which equipment would need to be refurbished, and how the equipment was to be shipped.  The rigs and equipment were located in Norway, and Norway is the place of domicile, nationality and business of two of the three parties, Valiant and Phillips Norway.  Although the parties signed the

agreement in Tulsa, the signing there was more an accident of time and geography than any reason giving rise to a substantial state interest in the litigation:  At InterFab's request, a Valiant representative stopped by InterFab's Tulsa office on his way back from Venezuela on unrelated business to sign the agreement. We find no error in the district court's conclusion that Norway governs the breach of contract claim.

## 2.  Tort Claims

In a tort action, the factors to be considered and evaluated are:  "(1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties occurred."  *Brickner*, 525 P.2d at 637.  The relevant factors are to be "evaluated according to their relative importance with respect to a particular issue."  *Id*.

The district court held that Norway was the place where the injury occurred because that is where the rigs and equipment were delivered and Norway was the place where the conduct causing the injuries occurred.  The district court concluded that the domicile and the place where the relationship between the parties is centered did not favor either party.  On balance then, the district court

-10-

concluded Norway had the most significant relationship to the tort claims and, therefore, that Norwegian law governed.

InterFab argues Oklahoma law governs the tort claims because the injury to InterFab occurred in Oklahoma when it wired funds to Valiant for the rigs and equipment, and the place where the conduct occurred which caused the injury is Oklahoma because that is where InterFab relied on Valiant's representation that it would release the equipment when it received payment. Again, we disagree.

With the exception of the negligent entrustment claim against Phillips Norway, and the fraud claim against Valiant for failing to release the goods after receipt of the wire transfer funds, the torts alleged against the defendants under theories of business interference, fraud and negligent entrustment all arise from Phillips Norway's and Valiant's representations in Norway about the condition of the goods. These representations were made in Norway, and InterFab received them when it inspected the rigs and equipment in Norway. As discussed above, the equipment was delivered to InterFab in Norway in accordance with the purchase agreement's "F.O.B. Stavanger" Norway provision. Norway then is clearly the location where the conduct and injury are centered, even though the effects of that conduct were also felt by InterFab in Oklahoma.

InterFab's tort claims are essentially fraud and misrepresentation claims. Section 148 of the Restatement specifically addresses the choice of law factors to

be considered in such cases. *See Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1536-37 (10th Cir. 1996). In the case of the business interference tort claims, the representations were both made and received in Norway and InterFab's actions in reliance on the representations--the making of the agreement--were taken in Norway. In such a case, the court should apply the law of the state where the false representations were made and received unless some other state has a more significant relationship to the transaction. *See* Restatement § 148(1).

InterFab alleges in its fraud claim that Valiant fraudulently induced it to wire-transfer funds when Valiant had no intent of releasing the goods. In this claim, InterFab's action in reliance arguably took place in Oklahoma. Section 148(2) of the Restatement applies to situations, like this one, where the reliance by one party occurs in a state other than the state where the misrepresentations were allegedly made. In these situations, the contacts to be considered are: the location of the reliance; the place where the misrepresentations were received; the place where the misrepresentations were made; the places of business and incorporation of the parties; the place where the tangible thing that is the subject of the transaction between the parties was situated; and the place where performance under the contract was to be rendered. *See* Restatement § 148(2)a-f.

The weight of the above contacts support the conclusion that Norway governs InterFab's fraud claim. The place where InterFab received any misrepresentations about the wire-transfer funds is approximately as important as the place where Valiant made the alleged misrepresentation. *See id*. § 148, cmt. g. Similarly, the places of incorporation and business are neutral. However, Norway is the place where the plaintiff was to render performance, where the purchase agreement was to be performed, where InterFab was to wire the funds, and where Valiant accepted the funds. Furthermore, the rigs and equipment, which were the subject of the transaction, were located in Norway. *See id*., cmt. i (explaining that when the subject of the transaction between the parties is a tangible thing, the place where the thing is situated is a contact of some importance). Thus, we agree with the district court that Norwegian law governs the fraud claim against Valiant.

Finally, all of the actions relating to the negligent entrustment claim against Phillips Norway occurred in Norway, the place where Phillips Norway and Valiant negotiated, executed and performed their sales agreement and the place where Phillips Norway allegedly failed to properly supervise the resale and refurbishment of the rigs and equipment.

In summary, we agree with the district court that Norway has the most significant relationship to the contract and tort claims in this action, and, therefore, that Norwegian law applies. We conclude that the district court did not abuse its discretion in dismissing InterFab's complaint under the *forum non conveniens* doctrine. The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED for substantially the reasons set forth in its order of October 19, 1998.

Entered for the Court

Stephen H. Anderson
Circuit Judge